FILED

2020 Aug-27  PM 04:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

SARAH LEWIS,                            )
                                       )
    Plaintiff,                       )
                                       )
v.                                     )   Case No. 2:18-cv-879-GMB
                                       )
CITY OF BIRMINGHAM,                    )
ALABAMA, and FRANK                     )
ALBRIGHT,                              )
                                       )
    Defendants.                      )

## MEMORANDUM OPINION AND ORDER

Pending before the court is the Motion for Summary Judgment filed by Defendants Frank Albright and the City of Birmingham, Alabama. Doc. 63.  The motion is fully briefed and ripe for disposition.  Pursuant to 28 U.S.C. § 636(c), the parties have consented to the jurisdiction of a United States Magistrate Judge.  After careful consideration of the parties' submissions and the applicable law, and for the reasons that follow, the court concludes that the defendants' Motion for Summary Judgment is due to be granted in part, and that the remaining claims are due to be remanded to the Circuit Court of Jefferson County, Alabama.

### I.  JURISDICTION AND VENUE

The court has jurisdiction over the claims in this lawsuit pursuant to 28 U.S.C. § 1331.  The parties do not contest personal jurisdiction, nor do they contest that

venue is proper in the Northern District of Alabama.  The court finds adequate allegations to support the propriety of both.

## II.  FACTUAL BACKGROUND

In the early morning hours of Saturday, April 14, 2018, Officer Jacob Morgan of the Birmingham, Alabama Police Department ("BPD") arrested Lewis without a warrant for possessing a firearm without a valid permit in violation of Alabama's State Firearms Act. Doc. 65-1 at 6; Doc. 59-2 at 3.  Officer Morgan was called to Lewis' location based on a report of a woman "slumped over at the wheel" of her vehicle in a parking lot. Doc. 65-1 at 4.  While Officer Morgan did not smell alcohol, he determined that Lewis "was obviously in no condition to drive" and observed that her vehicle was damaged. Doc. 65-1 at 5.  Lewis explained that she was in an accident just before parking her vehicle. Doc. 65-1 at 5.  As Lewis gathered her belongings so that Officer Morgan "could assist her in getting home," she told him that she had a firearm in her purse. Doc. 65-1 at 5.  Officer Morgan asked Lewis if she had a "concealed carry" permit, which she produced. Doc. 65-1 at 5.  However, the permit had expired ten months earlier. Doc. 65-1 at 5–6.  At this point, Officer Morgan placed Lewis under arrest. Doc. 65-1 at 6.

Officer Morgan transported Lewis to the Birmingham City Jail between 5:45 and 6:00 a.m. Docs. 65-1 at 6 & 65-2 at 3.  Lewis asked about posting bail but was told that she first had to be seen by a judge on Monday. Doc. 59-2 at 3.  Two days

later, on Monday, April 16, Officer Morgan executed a Birmingham Municipal Court Deposition and Complaint before a magistrate sometime before 5:45 a.m. for the purpose of establishing probable cause for Lewis' arrest. Doc. 65-1 at 6; Doc. 65-2 at 3; Doc. 65-3 at 13–14. The Complaint charged Lewis with the possession of a firearm without a valid permit in violation of the State Firearms Act, Alabama Code § 13A-11-73. Docs. 65-2 at 3 & 65-3 at 14.

After Officer Morgan executed the Complaint, Lewis was taken to Birmingham Municipal Court "within a few hours," where Judge Jeffery Gilliam appointed Lewis an attorney and granted her a $1,000 cash or professional bond. Doc. 65-2 at 3. Lewis maintains in her affidavit that the "Judge set the bond at $1,000 and [she] heard him say 'cash,'" Doc. 59-2 at 3, but she agreed in her deposition that she was "given a $1,000 cash or professional bond." Doc. 65-5 at 50. Lewis estimates that she was transported at approximately 9:00 a.m. and saw the judge at 11:00 a.m. Doc. 59-2 at 3. Lewis then posted a full cash bond and was released from custody. Doc. 65-2 at 4. She estimates that she was released at around 4:00 p.m. Doc. 59-2 at 4. Although Lewis testified in her deposition that she had the option to post bail within 48 hours of her arrest, *see* Doc. 65-5 at 86, it is undisputed that her bail determination did not occur until more than 48 hours after her arrest. On August 27, 2018, Lewis was sentenced to a 90-day suspended sentence, two years of probation, and fined. Docs. 65-2 at 4 & 59-2 at 4. Lewis then appealed to

the Jefferson County Circuit Court, where she pled guilty. Docs. 65-3 at 4 & 59-2 at 4. She then elected to participate in a state diversionary program as a "youthful offender." Docs. 65-3 at 4 & 59-2 at 4. Lewis missed two days of work as a result of her pretrial detention. Doc. 59-2 at 4.

About two years before Lewis' arrest, on June 16, 2016, Andra Sparks, the Presiding Judge of the Birmingham Municipal Court, had issued a General Order establishing the court's procedures for issuing bonds and determining defendants' indigence. Doc. 65-2 at 4. A defendant charged with a misdemeanor offense must "have bail set in accordance with the Bond Schedule or pursuant to an order setting bond by a judicial officer." Doc. 59-5 at 2. But a defendant "charged with a violent offense or an offense involving a dangerous weapon" must be held at the municipal jail "for a period of at least twelve hours from the time of his or her arrest before being eligible for release." Doc. 59-5 at 3. At the conclusion of the 12-hour period, the defendant is "eligible for bond consistent with the terms of this order." Doc. 59-5 at 3. If a defendant is not released, the court must hold a bond determination "within forty-eight hours of the person's arrest (or on the next business day if the person was arrested on a Friday, Saturday[,] or a long holiday weekend, but in no event longer than seventy hours)."[1] Doc. 59-5 at 3.

---

[1] This sentence fragment in the General Order does not identify the event that must occur by the conclusion of this time period, but the context leads to the conclusion that the order intended to set

The order directs judges to consider "the reasonable need to ensure persons on bond will return for trial, the concern for gun violence, the safety of citizens, and cooperation with federal, state and other law enforcement agencies" when making a bond determination. Doc. 65-2 at 5.  Those charged with gun offenses must appear before a Municipal Court judge, who will conduct a "meaningful hearing" and take into account the defendant's financial status, the appointment of counsel, any danger to the community, the likelihood of reappearance, and other factors. Doc. 65-2 at 5.

At all times relevant to Lewis' suit, Albright was the Chief Jail Administrator for the City of Birmingham Jail. Doc. 65-4 at 2.  He served in that capacity until August 17, 2018. Doc. 65-4 at 2.  In this role, Albright oversaw the jail's administrative functions and was responsible for public relations. Doc. 65-4 at 2–3. Both during and after Albright's tenure, the Birmingham City Council was the final policymaker for the City of Birmingham Jail. Docs. 65-2 at 2 & 65-4 at 2–3.

### III.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

---

the timeline for a bail determination, and the parties have not argued that the intent was otherwise. *See* Doc. 71 at 7.

summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute of material fact is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  In responding to a properly supported motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material fact." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Indeed, the nonmovant must "go beyond the pleadings" and submit admissible evidence demonstrating "specific facts showing that there is a genuine [dispute] for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted).  If the evidence is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

When a district court considers a motion for summary judgment, it "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party, and must resolve all reasonable doubts

about the facts in favor of the nonmovant." *Rioux v. City of Atlanta, Ga.*, 520 F.3d

1269, 1274 (11th Cir. 2008) (citation and internal quotation marks omitted).  The

court's role is not to "weigh the evidence and determine the truth of the matter but

to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

"If a reasonable fact finder evaluating the evidence could draw more than one

inference from the facts, and if that inference introduces a genuine issue of material

fact, then the court should not grant summary judgment." *Allen v. Bd. of Pub. Educ.*

*for Bibb County*, 495 F.3d 1306, 1315 (11th Cir. 2007) (citation omitted).

Importantly, if the nonmovant "fails to adduce evidence which would be sufficient

. . . to support a jury finding for [the nonmovant], summary judgment may be

granted." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1370

(11th Cir. 1997) (citation omitted).

## IV.  DISCUSSION

Lewis brings claims under the Due Process Clause of the United States and

Alabama Constitutions, along with causes of action based on various provisions of

the Alabama Code and Alabama Rules of Criminal Procedure. Doc. 1-1 at 7–9.

Lewis alleges that the defendants have violated her rights under the Due

Process Clause of the United States and Alabama Constitutions "by jailing her

without bail and without being brought immediately before a judicial officer," and

"by imposing a non-individualized monetary bail amount." Doc. 1-1 at 27.  She also

alleges that the defendants have committed false imprisonment under both federal and state law for "wrongfully and falsely" imprisoning her "for simply being charged with a misdemeanor firearms offense." Doc. 1-1 at 28.  Finally, Lewis asserts that the defendants' actions have violated various provisions of Alabama law, including Alabama Code §§ 15-13-105, 15-13-107, and 15-13-108, and Alabama Rules of Criminal Procedure 7.2 and 7.3. Doc. 1-1 at 27–28.

## A.    Federal Claims

### 1.    *Official Capacity Claims*

Lewis' claims against Albright in his official capacity are due for dismissal because "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  Because Lewis has already sued the City, Albright's employer, any federal claim against Albright in his official capacity is due to be dismissed as duplicative.

### 2.    *Due Process*

"[T]he right to an initial appearance is secured by the Due Process Clause of the Fourteenth Amendment." *Alexander v. City of Muscle Shoals, Ala.*, 766 F. Supp. 2d 1214, 1229 (N.D. Ala. 2011).  However, "[w]hen, as here, a detainee was arrested in the course of the commission of a crime and without a warrant, any due process right to an initial appearance may be subsumed by the Fourth Amendment right to a prompt judicial determination of probable cause." *Id.* at 1232.  The Supreme Court

has "held that the Fourth Amendment's shield against unreasonable seizures requires a prompt judicial determination of probable cause following an arrest made without a warrant and ensuing detention." *Powell v. Nevada*, 511 U.S. 79, 80 (1994).

In *County of Riverside v. McLaughlin*, 500 U.S. 44, 55 (1991), the Supreme Court held that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement."   However, "absent extraordinary circumstances, a longer delay violates the Fourth Amendment." *Powell*, 511 U.S. at 80.  Thus, a municipality "can presumptively hold a person for 48 hours before even establishing probable cause," and prior to setting bail. *Walker v. City of Calhoun, Ga.*, 901 F.3d 1245, 1266 (11th Cir. 2018).  Moreover, "§ 1983 provides no cause of action for violation of state-law procedural requirements, even if those requirements were instituted in part to ensure compliance with the federal Constitution." *Alexander*, 766 F. Supp. 2d at 1234–35.

"The substantive component of the Due Process Clause protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Davis v. Carter*, 555 F.3d 979, 981 (11th Cir. 2009).  "[E]ven conduct by a government actor that would amount to an intentional tort under state law will rise to the level of a substantive due process violation only if it also shocks the conscience." *Waddell v. Hendry County Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003) (internal quotation marks omitted); *see also Davis*,

555 F.3d at 982 ("Conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience-shocking in a constitutional sense.").   Conduct rises to the level of conscience-shocking if it is "intended to injure in some way unjustifiable by any government interest." *City of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998).

Moreover, under § 1983, a municipality is liable only "where an official policy causes a constitutional violation." *Walker*, 901 F.3d at 1255 (internal quotation marks omitted).   To establish a policy, a plaintiff can demonstrate either "(1) an officially promulgated policy or (2) an unofficial custom or practice shown through the repeated acts of a final policymaker for the municipality." *Id.* (internal quotation marks omitted and alterations adopted).   "Liability may be established by acquiescence in a longstanding practice or custom which constitutes the standard operating procedure of the local governmental entity." *Id.* (internal quotation marks omitted).

In her complaint, Lewis repeatedly references the Fourteenth Amendment's Due Process Clause but makes no mention of the Fourth Amendment. *See* Doc. 1-1 at 27–28.   She does seek to clarify and properly frame her argument in briefing, however, asserting that her "complaint is about the system which intentionally refuses to set bail for days rather than the issue of when a preliminary hearing or arraignment might be held." Doc. 71 at 9.   The gist of her argument, as best as the

court can decipher, is that the City's policy of holding defendants charged with violations of the State Firearms Act in jail for at least 12 hours and also requiring them to appear before a judge for a bail determination is unconstitutional because it may cause delays in excess of 48 hours. *See, e.g.*, Doc. 71 at 10 (stating that there is no justification for a 12-hour detention "other than 'delay for the sake of delay'"). She tacitly concedes that her probable cause hearing occurred promptly within the *McLaughlin* 48-hour window, stating that she "had to wait over 52 hours for any bail to be set" and distinguishing *Walker* by stating that the case "deals with probable cause hearings and not the setting of bail." Doc. 71 at 9. The basis of Lewis' argument is that the right to a prompt bail determination is "a liberty interest created by state law rather than a mere procedural violation." Doc. 71 at 10.

Nevertheless, Lewis' argument falls short for a host of reasons. First, Lewis has not alleged, nor submitted any evidence of, conduct by the defendants that "shocks the conscience." Judge Sparks explained in an affidavit that the Municipal Court policy provides for individuals charged with gun offenses (among other offenses) to appear before a judge instead of a magistrate so that the judge can conduct a "meaningful hearing" and consider a number of factors in determining the appropriateness of a bond amount. Doc. 65-2 at 5. He explained that the Municipal Court does not "delay to grant bond/bail for the sake of delay," but that the proceedings can be delayed by "police operations, correctional operations[,] or court

11

operations," and also offered that the court is not open on Sundays. Doc. 65-2 at 5–

6. Lewis has failed to submit any evidence rebutting Judge Sparks' contentions and

suggesting that the Municipal Court's bond policy is instead "intended to injure in

some way unjustifiable by any government interest." *Lewis*, 523 U.S. at 849.

Accordingly, any claim with a Fourteenth Amendment substantive due process basis

is due for dismissal.

Even if Lewis had pointed to the Fourth Amendment as the basis for her

federal claims, her claims still would miss the mark. With her official-capacity

claims against Albright dismissed and no legal or factual basis for an individual-

capacity due process claim against him, Lewis' sole defendant is the City. Accepting

for argument's sake that a wait in excess of 48 hours for a bond determination is, by

default, unconstitutionally impermissible (a proposition for which Lewis has cited

no legal authority), Lewis has not pointed to evidence in the record of a policy or

custom on the part of the City that results in defendants who are routinely held past

48 hours before receiving a bail determination. In fact, the Municipal Court's

General Order is the only "policy" Lewis identifies. *See* Doc. 71 at 10; Doc. 59 at

20 ("[T]he written policy directs the detention and City jail employees [to] carry it

out without judicial oversight or discretion."). But there are a number of reasons

why Lewis cannot survive summary judgment by relying on the General Order.

First, while the General Order allows for the possibility of detention up to 72

hours before a bail determination, it explicitly states that a detention of this length should occur only if a defendant "was arrested on a Friday, Saturday[,] or a long holiday weekend." Doc. 59-5 at 3.   Otherwise, the order requires a bond determination within 48 hours of a person's arrest, which is consistent with the presumptively constitutional time frame established in *Walker*. Doc. 59-5 at 3. Moreover, the *Walker* court found that jurisdictions should have "greater leeway in making bail determinations than probable cause determinations." *Walker*, 901 F.3d at 1267 n.13.   Thus, Lewis has fallen short of her burden to demonstrate that the City's pretrial detention policy is unconstitutional.

If there is no unconstitutional policy, Lewis must identify a City custom of detaining arrestees for an unconstitutional length of time prior to a bail determination.   There is no evidence in the record of such a custom.   Lewis claims that others have been treated similarly "insofar as bail not being set until each such person was taken before a City Judge" consistent with the Municipal Court's General Order. Doc. 59 at 7.   But Lewis points to no evidence in the record that the City has a custom of unconstitutionally detaining its arrestees prior to a bail determination. Instead, she cites the deposition testimony of Bettye King, a court administrator, who testified simply that the City follows the Municipal Court's General Order with respect to pretrial detainees. Doc. 59-8 at 7–8.   Thus, viewing the undisputed evidence in the light most favorable to Lewis, she has failed to establish an

unconstitutional policy or custom on the part of the City.

Lewis' assertion that her due process rights were violated for being assessed a "non-individualized" cash bond also cannot serve as the basis for a viable federal claim. Judge Sparks testified that bail determinations are individualized and based on a number of factors unique to each case and defendant, *see* Doc. 65-2 at 4–5, and Lewis has not introduced any evidence to suggest that the presiding judge in her case deviated from this policy. Accordingly, Lewis' contention of a "non-individualized" cash bond cannot serve as the basis for any viable federal claim.

### 3.    *False Imprisonment*

Lewis' false imprisonment claim fails because, as discussed previously, she has not presented evidence of an unconstitutional City policy or custom allegedly resulting in her imprisonment.[2]  Further, even if she had identified such a policy or custom, her false imprisonment claim would fail because she has not rebutted the City's evidence that there was probable cause for her arrest. *See Case v. Eslinger*, 555 F.3d 1317, 1330 (11th Cir. 2009) (observing that Eleventh Circuit precedent establishes that "a claim of false imprisonment, absent misidentification, depends on an absence of probable cause").  The arresting officer here testified that he

---

[2] While false imprisonment is a tort recognized in Alabama state law, *see, e.g.*, *Exford v. City of Montgomery*, 887 F. Supp. 2d 1210, 1229 (M.D. Ala. 2012) (citing Ala. Code § 6-5-170)), Lewis' complaint invokes the United States Constitution as one basis for her false imprisonment count. Doc. 1-1 at 28.  In this section, the court analyzes only the federal aspects of this cause of action.

discovered a firearm in Lewis' possession and that she did not have a valid permit, establishing probable cause for a violation of the State Firearms Act.  Accordingly, summary judgment on Lewis' federal false imprisonment claim is due to be granted.

## B.     State-Law Claims

Pursuant to 28 U.S.C. § 1367(c)(3), the court declines to exercise supplemental jurisdiction over Lewis' remaining state-law claims because her federal claims will be dismissed. *See* 28 U.S.C. § 1367(c)(3) (stating that a district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction").  Where all federal claims are dismissed prior to trial, district courts are discouraged from weighing in on the remaining state-law claims. *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088–89 (11th Cir. 2004); *see also Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.").  Before dismissing the remaining state-law claims, the court must consider the factors of judicial economy, convenience, fairness, and comity. *See Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 532 (11th Cir. 2015) (citing *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997)).

"Both comity and economy are served when issues of state law are resolved

by state courts." *Rowe v. City of Ft. Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002). "Federal courts are (and should be) loath to wade into uncharted waters of state law, and should only do so when absolutely necessary to the disposition of a case." *Ameritox*, 803 F.3d at 540. Indeed, the Supreme Court has declared that "[n]eedless decisions of state law should be avoided as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). Here, the court finds no reason to depart from this practice by adjudicating Lewis' state-law claims and engaging in an extensive analysis of the Alabama Rules of Criminal Procedure, around which the bulk of her allegations revolve, if her federal claims are dismissed prior to trial.

There is nothing before the court to suggest that the remaining factors of convenience and fairness weigh in favor of retaining supplemental jurisdiction. Moreover, the court can discern no possibility of significant prejudice to Lewis since her remaining state-law claims will be adjudicated in state court. Accordingly, the court declines to exercise supplemental jurisdiction over Lewis' state-law claims pursuant to § 1367(c)(3) and remands these claims to the Circuit Court of Jefferson County, Alabama. *See Lewis v City of St. Petersburg*, 260 F.3d 1260, 1267 (11th Cir. 2001) (holding that when a district court declines to exercise supplemental jurisdiction over state-law claims after dismissing all federal claims the state-law

claims "shall be remanded to state court, rather than dismissed, [if the] case was originally filed in state court and removed to federal court pursuant to 28 U.S.C. § 1441").[3]

## V.  CONCLUSION

For these reasons, it is ORDERED that the Motion for Summary Judgment filed by Defendants City of Birmingham and Frank Albright is GRANTED in part, and that the following claims are DISMISSED with prejudice: Plaintiff Sarah Lewis' claims against Albright in his official capacity, Lewis' federal due process claim, and Lewis' federal false imprisonment claim.

It is further ORDERED that Lewis' state-law claims are REMANDED to the Circuit Court of Jefferson County, Alabama.

A final judgment will be entered separately.

DONE and ORDERED on August 27, 2020.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE

---

[3] Lewis also has filed a Motion for Summary Judgment (Doc. 58) and a Motion for Class Certification (Doc. 60).  Because the court is dismissing her federal claims but remanding her state-law claims, and her motion for summary judgment is largely directed to her state-law claims, the court defers ruling on both of Lewis' motions (Docs. 58 & 60) in the interest of comity and judicial economy.